## HAMPSTEAD v. PLAISTOW.

Evidence tending to show that all the taxes assessed by a town in a given year were not paid, may, in the absence of other evidence, become competent upon the question as to whether any particular person who was assessed that year, did or not pay all his taxes thus assessed.

The books of a town showing a settlement between the overseer of the poor and the selectmen, of the overseer's account, including an item charged to the town as paid for the support of the pauper in controversy, would be competent in the nature of an admission, as evidence against the town on the question of the settlement of said paupers.

Taxes cannot be abated by vote of the town. The selectmen alone, or the court is authorized to make such abatement.

After a presumption of payment has arisen by the lapse of more than twenty years after the assessment and before the date of the writ, that presumption is to be weighed in connection with all the evidence in the case, and the presumption is to stand until it is rebutted and overcome by evidence.

A marriage brought about by fraud or force, or fear, so as to be void *ab initio*, without ratification, may be ratified and confirmed by the injured and innocent party after the fraud is known, and the duress or cause of fear removed, and the marriage thereby rendered valid.

A voluntary cohabitation after full knowledge of the fraud, and after the force or cause of fear is removed, will cure the defect.

Whether the fraud or duress of third persons, not participated in by either of the parties, will avoid a marriage, *quære ?*

Where the county commissioners have allowed and paid a claim against the county for the support of a pauper, that stands in the nature of a judgment that such person is a county pauper, and is evidence of such facts as must necessarily have been found as the foundation of such judgment, and is *prima facie* evidence that such pauper has no legal settlement in this state.

After a notice in writing, duly served upon defendant town, purporting to be signed by the officers of the plaintiff town, of supplies furnished to a pauper, the acts of the plaintiff town subsequent to such notice are competent evidence upon the ratification of such notice by the plaintiff town.

ASSUMPSIT, by Hampstead against Plaistow, to recover for supplies furnished to Cynthia Burrill, *alias* Willey, and her minor child, alleged to be paupers having their settlement in Plaistow. Writ dated February 28, 1867. The return on the notice stated that the notice was "left at the usual place of abode" of certain town officers. Defendant's objection to the sufficiency of this return was overruled, subject to exception. Defendant objected early in the trial that there was no evidence that the notice (which purported to be signed by officers of Hampstead) was in fact signed by officers of Hampstead. No ruling was made at the time, and the objection was not referred to again, until after the arguments had begun, defend-

ant's counsel took the ground that the action must fail for want of proof on this point. The objection was not sustained. After verdict for plaintiff, the court offered, if defendant desired, to empannel a new jury and submit to them the issue whether the notice was in fact signed by the proper officers of Hampstead, and the court said that if this issue should be found for defendant, the verdict already returned would be set aside. Defendant did not desire to try the issue suggested but excepted to the general verdict for plaintiff, " because there was no evidence of notice of plaintiff to defendant of supplies furnished the alleged paupers." The evidence tended to show that Cynthia Burrill was born December 29, 1837. She never acquired a settlement in her own right. Plaintiff contended that her father James Burrill acquired a settlement in Plaistow prior to 1848 by seven years' successive payment of poll-tax; and also by owning for four years real estate of the value of $150, and paying all taxes assessed. Defendant denied that Burrill had paid taxes the requisite number of years, or that his real estate was of the requisite value. Defendant also contended that even if Burrill had a settlement in Plaistow, yet his daughter Cynthia's settlement was changed in 1865 by her marriage to Daniel S. Willey. Plaintiff contended that Cynthia was not legally married to Willey, but that if she was, her settlement still remained in Plaistow, because Willey had no settlement in this state. Plaintiff introduced the town books of Plaistow, which show that James Burrill was taxed in 1830, 1831, and 1832; that he was not taxed in 1833; and that he was taxed in every year from 1834 to 1847 (both years inclusive).

Defendant offered to read from the town books of Plaistow an extract from the report of a " committee to settle with the selectmen of Plaistow for the year ending March 13, 1832," containing among items expended by selectmen the following, " abatements $6.49." The evidence was excluded subject to exception. In the books of Plaistow there is a heading, " March 13, 1832." Selectmen of Plaistow the present year :" then follow the names of the selectmen ; then numerous items of account ; at the close of these items is the following : " March 11, 1833 ; this day, we the subscribers, collector and selectmen of Plaistow recorded and settled all the accounts for the collection of taxes for the year past and made even ;" signed by selectmen and collector ; then follows report of committee to settle with the selectmen of Plaistow for the year 1832. In 1838 there are similar headings and signatures, except that, instead of the report of a committee, there is a report of the auditors to the effect " that the selectmen's accounts are correctly vouched and cast, and their proceedings fair and honorable." Defendant proposed to read the following extract from the account from March 1832 to March 1833 : " Paid Samuel Eaton for interest on old taxes abated this year $ .26 ;" also from the account for 1838 the following : " An order given Joseph S. Pollard on collector Hills for ten dollars and fifty-two cents, it being for an allowance on taxes assessed 1834 and and 1836 which could not be collected—$10.52." Also the follow-

ing : " An order given Joseph S. Hills on collector Hills for six dollars and forty-nine cents, it being an allowance on taxes which could not be collected $6.49." There was no evidence that Hills was collector. The evidence was excluded, subject to exception. Defendant proposed to read from the town accounts for 1843, signed in same manner as in 1838, the following extract : " The town voted to abate one half of the county, state and town taxes assessed for the year one thousand eight hundred and forty-two, which amount to nine hundred and one dollars and twenty-two cents which stood credited to Joseph S. Hills, collector—$901.22." Plaintiff objected generally, and also took the objection that it was not authenticated. The evidence was excluded subject to exception. Defendant introduced as evidence the books of Hampstead, showing Burrill taxed there from 1849 to 1855 (both years inclusive), not taxed in 1856, 57, 58, 59, 60, 62, 63, 64 and 66 ; and taxed in 1861, 1865, and 1867. Subject to defendant's exception, plaintiff read entries from the books of Hampstead to the effect that Burrill's taxes were abated in 1851, and 1855, and 1861. Amos Buck testified that he was a selectman in 1851 to 1852, and might have been moderator in 1852 ; that at the annual meeting in 1852 (his impression was after the meeting opened and while some balloting was in progress) Burrill said he wanted the right to vote and offered the amount of his tax for 1851, which had *been abated,* to restore him the right to vote. The selectman took the money and paid it into the town treasury, and Burrill was permitted to vote.* Defendant offered no other

---

*The opinion of this court, in *Plymouth* v. *Andover,* Grafton County, decided March adjourned term, Merrimack county, 1869, may be useful in determing what is a payment, though it did not decide the point elaborately argued by counsel, that the statute, prohibiting one from voting where his taxes had been merely abated, without his request, and were unpaid, was unconstitutional. This case was assumpsit for supplies furnished a pauper. The opinion was as follows :

PERLEY, C. J. Ichabod Robie, the pauper, was taxed for his poll and estate in Plymouth, for seven years in succession including the year 1850, and he paid all the taxes assessed on him in these years, unless it should beheld that he did not pay the taxes of 1850, on the following statement of facts.

His taxes assessed in the year 1850 were abated, at his request by the selectmen of the town, for the year 1851.

At the annual election in March, 1852, the same selectmen who had abated his tax, for the year 1850, refused to put his name on the list of voters, on account of the previous abatement of his taxes for 1850. In order to have his name put on the list, and to be allowed to vote, he raised the money and tendered the amount of the taxes which had been abated. The selectmen took

evidence of Burrill's having ever paid any tax in Hampstead.    Subject to exception, plaintiff was permitted to read from the books of

---

the money paid it into the town treasury, inserted his name in the list of voters, and allowed him to vote.

The question is whether the tax of 1850 was paid, within the meaning of the statute which enacts that " any person of the age of twenty-one years, who shall have resided in any town in this state, and being taxed for his poll for seven years in succession, *shall have paid all taxes* legally assessed on his poll and estate, during said time, shall thereby gain a settlement in such town."

The case of *Ford* v. *Holden*, 39 N. H. 143, would seem to be decisive of the present question.    In that case, it was held that the abatement of taxes assessed in political years previous to that in which the plaintiff offered to vote, would not disqualify him from voting.

The tax in the present case was assessed in 1850, and the pauper offered to vote in 1852.

In this case, as in *Ford* v. *Holden,* the selectmen refused to put the name on the list because the tax had been abated.

In this case, as in that, the pauper paid the tax in order that he might be allowed to vote, and on payment of the money he was allowed to vote.

The money, in both cases, was actually delivered over to the town treasury.

*Ford* v. *Holden* was assumpsit for money had, &c., of the selectmen, who had received the money, and held that the defendant was liable in that form of action.

This must have been on the ground that, so far as the plaintiff was concerned, the money, notwithstanding the payment of the same sum into the treasury, still remained in the hands of the selectmen who received it; that the money having been extorted by withholding the right to vote, the payment was not voluntary, and did not authorize the selectmen to pay it to the town; or, in other words, that it was not paid to the town at all and no payment of the tax.

The case of *Ford* v. *Holden* was put on the ground that the tax having been abated was extinguished, and there was no equitable claim remaining, as in the case where an action is defeated by a statutory bar, like the statute of limitations, or a discharge in bankruptcy, where the debt may be revived and paid, notwithstanding the statutory bar.    Judge Sawyer says " The taxes had been abated, and the effect of the abatement was to extinguish them."

The pauper in this case, as well as the plaintiff in *Ford* v. *Holden*, might have recovered back the money he paid under color of a demand which had no existence.    The payment, according to the doctrine of *Ford* v. *Holden*, was no payment of a tax, or of any other demand due the town, it was an involuntary payment extorted by refusing him his legal right to vote, which could not operate to discharge and pay a tax already extinguished by abatement.

What would be the effect on a pauper's settlement, of his paying an abated

Plaistow, under the heading : " Nathan F. Hunkins, overseer of the poor in account with poor of Plaistow," " Cr." the following :
" 1857.

<div style="margin-left:2em">

March 3d.  By James Burrill, expense of            34.06 ;"
Also to read under heading
" Stephen Badger, overseer, Cr." the following—
</div>

" 1859

<div style="margin-left:2em">

Feb. 26.   By cash paid for James Burrill            13.47."
</div>

Subsequently defendant's called said Hunkins and Badger who each testified that, while overseer of the poor of Plaistow, he had rendered assistance to James Burrill.

Subject to exception plaintiff's was allowed to put in the following certificate—

"Daniel S. Willey of Danville, N. H. age 26 and Rosannah West of Brentwood, N. H., aged 19, were married at Kingston, N. H. by Rev. John H. Mellish, April 15, 1857,

<div style="margin-left:6em">

A true copy of the Records of Kingston.
</div>

U. S.
5 cents
April 5,
1869.

<div style="margin-left:8em">

Attest,      ANDREW J. CILLEY,
</div>

Kingston, N. H. April 19, 1869.            Town Clerk."

---

tax of the same year, in order, under the statute, to obtain a right to vote, it is not necessary in this case to consider.  The payment in such case might be regarded as voluntary, and the officers receiving it would receive it for the town, which would distinguish it materially from the case, where the payment is extorted by an illegal refusal of the right to vote.

I am of the opinion that the tax of 1850, on the facts stated in this case, was not paid by the pauper within the meaning of the statute.  If it could be paid then, to answer the terms of the statute, I see no reason why it could not be paid now.  The tax was as effectually abated and gone by the lapse of one year as of twenty, and to allow a tax to be paid by, or on account of a pauper, after the year in which it was assessed had passed, without any limitation of time, would open a wide door, if not for fraud, at least for a great deal of shrewd management between towns, where the settlement of paupers depended on the payment of that tax.

The safe rule would be to follow the doctrine of *Ford* v. *Holden*, and hold that after the party's right to pay under the statute was gone, in order to revive his right to vote, the tax is extinguished by the abatement, and of course cannot be paid within the meaning of the statute."

*Shirley*, for plaintiff.

*Minot* & *Mugridge*, for defendant.

<div style="text-align:right">REPORTER.</div>

† This point was taken by counsel in *Andover* v. *Merrimack Co.*, 37 N. H. 437, but not decided by the court.            REPORTER.

Subsequently defendant called Rosanna West who testified in answer to defendant's questions that she was married to Willey by Rev. Mr. Mellish; and defendant also proved that Willey's marriage to Rosanna West was null and void because said Rosanna had another husband living at the time the ceremony of marriage was performed between Willey and herself. It appeared that shortly before Cynthia's marriage to Willey, a complaint against Willey under the bastardy act, signed and sworn to by Cynthia, was brought by a magistrate to the overseer of the poor of Plaistow. Subject to exception a deputy sheriff was allowed to testify in substance as follows—"A warrant under the bastardy act against Willey, issued I think on complaint of Cynthia, was brought to me by the overseer of Plaistow, who wished me to go and procure the marriage of Willey and Cynthia, telling me that if we could bring the marriage about, it was all he wanted; but that otherwise, I must serve the warrant and bring Willey to Exeter jail. Having found Willey at Burrill's house I told him my business, that I had a warrant for his arrest, that if he would consent to marry Cynthia, that would answer the purpose and I should not serve the warrant. Willey at first objected to marrying. After talking with him I told him there were only two ways, and he could take his choice, that he must either marry Cynthia or go to jail. After some little time he concluded to marry. He said he thought that would be the best way to get out of the scrape, and he would marry as many as we wanted him to; that it didn't make any difference to him how many he married. A magistrate was sent for and the marriage ceremony performed forthwith."

It appeared that subsequently to this occurrence, which was in 1865, Willey and Cynthia lived together for a time as man and wife. It appeared that said Daniel S. Willey had never gained a settlement in this state in his own right. His father, Wm. Willey, was taxed in Danville in 1829 for his poll and in 1830 for his poll and cow. His mother's maiden name was Lovie Sanborn; and she was born Nov. 17th 1802. She has always lived in Danville where Daniel S. Willey was born about 1830 or 1831. Daniel lived in Danville till he was twenty-one, and for sometime afterwards. Plaintiff introduced evidence tending to show that Lovie S. Willey was never known to have any property, and that she had been relieved by the county; also evidence tending to show that Wm. Willey was never taxed in Danville, except in 1829 and 1830; that he was a mason by trade, that he stayed in Danville only two or three years, about 1829 and 1830; that witness who knew him while he was in Danville never knew him to have any property. One of plaintiff's witnesses, living in Hampstead, testified on cross examination that Daniel S. Willey and his mother "occupied a place in Danville," and that he thought he had seen them there at different times for three or four years. There was evidence on which the jury might have found that Burrill's real estate in Plaistow, as well as the real estate owned by him in Hampstead after he sold in Plaistow, was worth $150.00. Subject to exception, defendant introduced evidence that in 1839

some taxes for the year—in Plaistow were abated; that James Burrill's tax for 1839 was abated, that in 1845 in the collector's account in the town book, the collector was credited " by abatement of taxes 24.43 ;" and that in 1847 there was an entry on the town books of an abatement of " 8 poll taxes which account he collected—12.00.' In 1847 James Burrill was taxed for one poll and two acres of land valued at $40.00. Defendant called James Burrill who testified as follows—" I moved to Hampstead in June 1848. While in Plaistow there were some times I didn't pay taxes. I remember paying a good number of taxes in Plaistow." Upon cross examination he testified—" I think, though I am not positive, that I paid all the taxes they asked me to pay. I was sick two or three times and they cancelled my taxes. I never remember asking an abatement." The jury were instructed that the burden of proof was on Hampstead to show Cynthia and her daughter chargeable to Plaistow under the pauper laws. The jury were instructed that in the absence of evidence there is a presumption that taxes assessed more than twenty years prior to the date of the writ have been paid; that in determining upon the evidence in this case the question whether Burrill paid his taxes for seven years in succession, this twenty years presumption might be weighed by the jury with the testimony in the case as one element to aid them in coming to a conclusion. To the latter instruction defendant excepted. The jury were instructed that if Plaistow used the bastardy warrant not merely for the purpose of compelling Willey to support the child (which would have been a perfectly legal use of the warrant), but for the purpose of compelling him to marry Cynthia, and this was done by Plaistow for the purpose of changing Cynthia's settlement under the pauper law ; then, if whatever consent Willey gave to the marriage was produced by such use of the warrant, and the marriage was not the voluntary act of Willey, but was induced solely by the use made of the warrant ; for the purposes of this case it was not a legal marriage. To this instruction defendant excepted. The court, after instructing the jury that if there was a legal marriage the burden of proof was on Hampstead to show that Willey had no settlement in this state, remarked that Hampstead was thus required to prove a negative, and said in substance—" We suggest to you whether as full proof can be expected in such a case, as would be expected where the proposition to be made out is an affirmative one ; or in other words, whether the absence of full proof in such a case would be as suspicious as it would be if the plaintiff was proving an affirmative." To these remarks defendant excepted.

After verdict, for plaintiff the defendant tendered the following (among other) exceptions—

"Because there was no evidence to show that Willey or his father had not gained a settlement in the state between 1820 and 1830, and because there was no competent evidence to prove that said Willey had not acquired through his father a settlement in the state in some town other than Plaistow after 1830." " Because there was no competent evidence that Cynthia ever gained a settlement in Plaistow."

The jury returned a verdict for the plaintiff.   At the time the verdict was returned the court asked the jury the following question (in substance)—" Did you find it more probable than otherwise that James Burrill paid all taxes assessed against him in Plaistow for seven successive years after 1839 to and including 1846 ?"

The court also  asked the jury—" Did you find it more probable than otherwise that Willey had no settlement in this state when he married Cynthia ?"  The jury answered both questions in the affirmative, and also informed the court, that they found that Burrill's real estate in Plaistow was worth $150.00.

Defendant moves to set aside the verdict by reason of the foregoing exceptions ; and the questions of law were reserved.

*Hills & Small*, for defendant.

I.   *There was no proof of notice.*

To give the facts correctly and exactly, the case should state that when the papers purporting to be notices, signed by the overseers of the poor of Hampstead, were  offered in evidence, the defendant objected that it did not appear and had not been proved who were the overseers of the poor in Hampstead ; that the signatures to the notices were not proved, and it was not proved that the persons who signed the notices were the overseers of the poor then.   The court allowed the evidence to be read, upon the suggestion that any defect in  the evidence in that respect  might  be subsequently supplied. There is no obligation, independent of statute, which  binds one town, more than another, to maintain a particular pauper ; and it has always been held that, in order to charge a town, the statute must be strictly complied with.   *Meredith* v. *Canterbury*, 3 N. H., 81. *Rumney* v. *Allenstown*, 2 do., 470.

There is no presumption in favor of these notices.   They must be proved, as a notice should be in any other case.   The exception was taken in season ; it lay at the foundation of the case.   If the plaintiff could have obviated it, it was bound to do  so ; and we submit, with  their  very astute  counsel, would  have  done  so if they could.   It was not done, and we say it was fatal to their case. The offer of the court to try  the question of  notice  does not obviate the objection.   It was not in the nature of an order, giving the defendant  the alternative to thus try  the issue or waive the objection, for  the court has reserved the question.   The proposition of the court in no way inteferes with the objection.   It is the right of the defendant  to have all his objections that are properly taken, passed upon—each upon its own merits.   There has been no waiver of the objection. and we submit that upon this point the verdict cannot be sustained.

II.   The evidence offered by the defendant from the town books of Plaistow, tending to show abatements, which was rejected, should have  been received.   The  proof relied upon for proof of the payment  of these taxes, was merely the presumption from the lapse of

twenty years. Though such a presumpsion exists, it can exist *only* *in the absence of all proof to the contrary.* *Andover* v. *Merrimack County*, 37 N. H., 441. *Hopkinton* v. *Springfield*, 12 do., 330. Any evidence, the legitimate tendency of which is to show that the pauper's tax had not been paid, is admissible. The extracts found in the town books of Plaistow, from the report of "a committee to settle with the selectmen of Plaistow for the year ending March 13, 1832—Abatements, 6.49 ;" and the extracts from the town books, under the heading, "March 13, 1832 ;" also the extracts from said books, from the account from March, 1832, to March, 1833, and 1838 ; and as to the order on collector Hills, should all have been admitted. It is not material to the competency of this evidence, whether or not the extracts proposed to be read amounted in law to an abatement of taxes. It was a pure question of fact for the jury to pass upon, whether the tax had been actually paid, or not ; and it was only a difference in degree, and not in the character of the evidence on that point, whether the taxes were actually abated, or whether the evidence offered tended to show that it had not been paid. Upon this point *Grantham* v. *Canaan*, 38 N. H., 268, is directly in point. Nor does the form of the abatement or evidence tending to show abatements, being evidence of general abatements merely, go to the *competency* of the evidence. It was to be weighed by the jury with the testimony of Burrill, that he sometimes did not pay taxes in Plaistow while he lived there ; and with the evidence as to his property ; with a view to see whether it was more probable than otherwise that he did pay his taxes for the years in question.

III. We submit that the instructions of the court to the jury, that in determining upon the evidence whether Burrill paid his taxes for seven years in succession, this twenty years' presumption might be weighed by the jury with the testimony in the case, as an element to aid in coming to a conclusion, were erroneous. It is agreed in all the cases that this twenty years' presumption arises only in *the absence of all evidence to the contrary.* *Hopkinton* v. *Springfield*, 12 N. H., 328. *Andover* v. *Merrimack*, 37 do., 441. *Pittsfleld* v. *Barnstead*, 40 do., 478.

If, then, the presumption can arise only in the absence of all evidence to the contrary, it cannot arise where there is some evidence to the contrary. The evidence offered and above considered, was not the only competent evidence tending to show that the taxes had not been paid. There was other evidence of it from Burrill himself ; and when this testimony was received, that presumption no longer existed. The burthen was then on the plaintiff to show affirmatively that the tax had been paid. At all events, the presumption was gone, and the court should not have instructed the jury to weigh as a "presumption" what no longer existed as such.

IV. The evidence of the vote of the town to abate one-half the taxes, should have been received. There was no evidence tending to show that the tax was not legally assessed ; and the vote to abate it, whether in law an abatement or not, tended to show that the tax for that year had not been paid.

V.   The instructions of the court in relation to the marriage of
Cynthia were erroneous.   It was the right and duty of the overseers
of the poor of Plaistow to procure from the father of the prospect-
ive bastard, security for its support.   The law has provided the
means for doing it.   The ordinary means were adopted in this case.
We say *adopted*, because the evidence was, and the case ought to
show, that the overseers of the poor of Plaistow had nothing to do
with procuring the child to be sworn, but adopted and prosecuted
the suit afterwards.   It was the right of the said overseers to prose-
cute the suit to final judgment; if the respondent was convicted, to
send him to jail, unless he gave the proper security.   And we sub-
mit, if the overseers thought that the marriage of Willey and Cyn-
thia would be proper security for the maintenance of the bastard,
they had a right to propose to release him, upon his marrying her,
and the marriage would be valid, whatever the consequences might
be in relation to the settlement of the wife or child.   *Concord* v.
*Goffstown*, 2 N. H., 263.   The arrest was legal.   It was not pro-
posed to use the arrest for an illegal purpose, nor to inflict any pun-
ishment upon him that the law does not authorize in such a case.
They gave him his option, to give security by marrying the girl, or
submit to a trial upon the warrant, with whatever consequence might
legally follow.   Moreover, the settlement of Cynthia was not then
in controversy.   The evidence showed that, as between themselves,
the parties regarded it a legal marriage.   They lived together as
husband and wife, and had other offspring; and the town of Hamp-
stead could not have been prejudiced by the marriage, for, as the
case shows, Willey had no settlement in Hampstead, and therefore if
any change of settlement could result from the marriage, it must
have been to the advantage of Hampstead.   Consequently, we sub-
mit, in no view could Hampstead set up the invalidity of this mar-
riage.   They were not parties, or privies to it, nor injuriously
affected by it; and the marrirge, at all events, was not absolutely
void.   These parties, Willey and wife, were competent to contract,
and, if all the plaintiffs claim and all that the charge suggests had
been true, it would by no means follow that the marriage was either
void or voidable.   Bishop on Marriage and Divorce, Sec. 121.   If
voidable, it might be confirmed by the parties, and the proof was, that
it was confirmed by cohabitation, and living together as husband and
wife.   No one can take advantage of that fraud but the party de-
frauded and his privies.   Hampstead was not and could not be
defrauded.   The marriage could not have made Hampstead liable
for the support of anybody.   So Hampstead has no right to set up
the illegality of the marriage.   *Gage* v. *Gage*, 29 N. H., 533, and
cases cited.   Were the law as the court instructed the jury it was,
the validity of this marriage could not be determined by third per-
sons who had no interest in it.   It avails nothing that the court said
that for *the purpose of this case* it was not a legal marriage.   If it
was not a legal marriage for the purpose of this case, it was not le-
gal for any purpose; and if legal, it was legal for all purposes.

Otherwise the singular result would follow, that a marriage entirely valid between the parties, may be entirely invalid as to everybody else. Whatever inducements may have produced the marriage, if the parties themselves, being competent to contract, and the settlement of neither of them being in controversy at the time, chose to regard the marriage as valid, it was so as to all the world.

*Hatch and C. U. Bell*, for plaintiff.

I. The notices were in form that the law requires. The question raised was whether the notice was signed by the officers of Hampstead. It is a question of evidence which the strictness of the pauper law does not reach. The town has ratified the notices by acting on them since, which gives them equal validity as if they had been properly signed to begin with. *Backman* v. *Charlestown*, 42 R. 125. *Grafton* v. *Follansbee*, 16 R. 450. The giving of the notices was part of a proceeding commenced by the town of Hampstead, of which this suit is but a continuation, to recover of defendant the value of the supplies furnished to its paupers. It is a notice of the town by its overseers, and like all notices upon which a party claims to act, it is *presumed* to be genuine. Universal practice in cases of notices to quit, notices of the dishonor of a note, and of all letters and correspondence addressed by the party offering it in evidence to the other party, establishes this presumption. Mr. Buck, one of the selectmen and overseer of the poor of Hampstead, after this objection was made, was examined as a witness by the plaintiff. He testified that he furnished the supplies sued for, and his name was signed to the notice. He was the active agent of the town in prosecuting the suit. (Plaintiff moves that these facts be added to the case.)

II. If the Plaistow books had any tendency to show that Burrill did not pay his taxes, it was so infinitely slight that they were not evidence in any legal sense. The court can see that the evidence was too immaterial to influence a verdict either way. But there are other essential objections to the evidence.

1. The first is the statement of a committee unknown to the law and not more competent than any other hearsay. 2. The second purports to be a record of the settlement of accounts between the selectmen and collector, and was not a proper subject of record. The original account was not produced nor its absence accounted for. But how can the accounts between selectmen, committees and tax collectors be evidence against the plaintiff? The testimony of the men themselves at trial that some taxes were unpaid those years, without anything further, would not have been competent; much less their statements out of court, and these are not corroborated by being copied into the selectmen's book.

There is nothing in the records excluded that tends to prove such an abatement as released any person from paying his tax, except possibly the abatement $6.69 in 1832, which is immaterial. The

" old taxes abated in 1833,—.26" do not appear to have been any of the taxes for the years relied on by plaintiff. The orders given to Pollard for taxes which could not be collected were in no sense releases of the tax-payers. In the cases cited the evidence was not independent evidence on the question of payment, as here, but one circumstance among others, which taken together made one transaction. That transaction proved non-payment. That case is in every respect stronger than this. The jury found the Plaistow place, worth one hundred and fifty dollars, and payment of taxes from 1843 to 1846, which was enough, and all evidence excluded for years before 1843 is made immaterial. The vote of the town was passed in 1843, and was to abate one half the tax for 1842, as will appear by the books, which are part of the case, and was therefore immaterial.

III. The presumption of payment is a matter of common sense and for the jury to omit to consider it, would be to violate common sense. A presumption does not vanish when evidence is introduced; it remains in full force, and is overcome or not, according to the evidence against it. Any other view overlooks entirely the reasonable ground on which it is established. Greenleaf on Ev, Vol. I. §§ 33–39; Phillips on Ev. Vol. I. 459. Cowen's note, 301. 3d Am. ed. Phillips on Ev. Vol. 1. chap. IX. 436, Note 285.

The statement in defendant's brief should be, " the twenty years presumption is *conclusive* only in absence of all evidence to the contrary." See cases cited by defendant.

IV. The vote of the town of Plaistow to abate half of the taxes for 1842 was not properly proved by an extract from the town accounts. But if proved, it amounted only to a regulation of the amount assessed that year; and the balance stood as the sum which the tax-payers were " legally assessed." The vote was in the nature of an appropriation, not an abatement.

V. The charge as to the marriage is fully supported by *Farmington v. Somersworth*, 44, R. 589, and was in accordance with the law. See cases cited. The defendant could not set up its own fraudulent act, and so far as the purposes of pauper law and this case are concerned it was not a legal marriage. Whether it was legal for other purposes, and as to other parties than the town of Plaistow, is not a question raised by the case. But the instruction is not a ground for setting aside the verdict for the jury have found, that Willey had no settlement in the state, and therefore it was of no consequence whether the marriage was valid or void. It could not change the settlement.

SARGENT, J. In examining the exceptions in this case, it may aid us to consider what the jury have found as the facts in the case, upon which the verdict rests. They found, first, that James Burrill paid all taxes assessed against him in Plaistow for the years 1840 to 1846 inclusive;—seven consecutive years,—and the case shows that he was there taxed in each of those years.

He would thus have gained a settlement in either of two ways,—

by being taxed for his poll seven years in succession and paying all taxes assessed against him, or by owning real estate for four years in succession and paying all taxes assessed against him and his estate, which estate the jury find to be of the value of one hundred and fifty dollars.   The jury also find that Willey had no settlement in this state at the time he married said Cynthia.

Our impression is that the testimony offered by the defendant, though very remote, was yet competent, so far as relates to the years 1832, 1833, and 1838.   It had some tendency to show that a certain portion of the legal taxes for those years had not not been paid, whether they had been legally abated or not, was not material.   If they had not been collected or paid, then somebody had failed to pay their taxes, and it was for the jury to settle, whether or not it was more probable than otherwise, that it was James Burrill who did not pay, upon all the evidence before them as to his ability, &c.

But supposing this testimony had been admitted, and that the jury had found upon that and other testimony, that said Burrill's tax for these years had not been paid, that becomes entirely immaterial, since the jury find that said Burrill gained a settlement subsequent to all these years, to wit, after 1839.

We come next to consider the evidence offered and rejected of the abatement of the tax of 1842, by vote of the town in 1843.   In one view this is immaterial, as without the year 1842, the residence was gained by the ownership of one hundred and fifty dollars' worth of real estate for four consecutive years, and the payment of all taxes assessed thereon, viz., for the years 1843, 1844, 1845 and 1846.   So that if we should find this evidence competent, and that it ought to have been received, and if received, that it would have satisfied the jury, that all taxes legally assessed for the year 1842 were not paid, yet it would not disturb the verdict on one ground, but would upon the other ground, that he was taxed seven years in succession, and paid all taxes thus assessed.

But let us examine this exception.   This does not stand upon the same ground as the evidence offered by the plaintiff, of the allowance by the town of Plaistow of the account with their own overseer of the poor, who had paid certain sums for the support of said Burrill. That stands in the nature of an admission on the part of the town of their liability as proved by their own entries in their own books of account, as allowed by the town on a settlement with its agent.

But in this case, the evidence is offered by the town in its own favor, and it offers what purports to be a vote of the town, and a very extraordinary vote too, as shown by an extract from the town accounts, for the year 1843.   But a vote of the town is not to be proved in that way, especially when offered and relied on by the town as evidence in its own favor.   Such a vote to be valid must have been passed at a town meeting, the proceedings of which must be a matter of record.   And a record of the vote itself would be the best evidence, and the only proper evidence, of such action on the part of the town.   It must also appear, in order to make such a vote

binding in any case, that a proper article was inserted in the warrant for town meeting. The objection taken, that as a vote of the town, it was not properly authenticated, was well taken, and we are forced to the conclusion, that the defendant did not leave this matter in that way, if there was any better evidence that could have been offered.

But, however that may be, the exception being well taken, is a sufficient reason for the exclusion of the evidence.

But there are other reasons, covered by the general objection in this case, which seem to be valid, why this testimony was not competent. A vote of the town, however, formally passed, to abate a tax would be of no force or effect. The law has not conferred that power upon the towns, but upon the selectmen and the court. A party who has applied to the selectmen unsuccessfully, may apply to the court, and either for good cause shown, may abate any tax assessed by the same, or any former board of selectmen. General Statutes, ch. 53, secs. 10 & 11. All that a town could do, would be to instruct their selectmen; but such vote would not bind either the selectmen or the court.

But that is not all. Neither the town, nor the selectmen, nor the court, has any power to abate the state and county tax, so that the town must pay them in some way. Nor can we conceive of any case in which a town would be likely to undertake to do what was claimed to have been done, unless by some mistake the selectmen of 1842 had assessed their tax upon the whole valuation, without reducing it, and thus have got their tax just twice as large as it should have been, and the collector had collected one half of it, and the town undertook the next year to abate the rest; which, instead of showing that all taxes legally assessed were not paid, would more probably show that the whole assessment was illegal. But whatever the facts in the case may have been, there is sufficient reason why the evidence, as it was offered, was rejected.

The ruling of the court, as to the presumption of payment was correct. In cases like this, the presumption is to be weighed, in connection with all the evidence in the case, and the presumption is to be *rebutted*, to be *overcome* by the weight of evidence on the other side.

Slight evidence would not overcome the strength of the presumption, but important and direct evidence would do so. The first class of presumptions of law as treated of by Greenleaf. 1 Greenl. Ev. sec. 15, are those which are termed conclusive, and which cannot be rebutted or overcome by any evidence. The second class of presumptions of law are termed *disputable*, the "*presumptiones juris*" of the Roman law, which may be overcome by opposing proof. 1 Greenl. Ev. secs. 33 & 38. One of this class of presumptions is, that every man is presumed to be innocent till he is proved to be guilty, and it is expressly laid down (sec. 34) that this legal presumption of innocence is to be regarded by the jury in every case *as matter of evidence*, to the benefit of which the party is entitled; and though it may require more evidence to overcome this presump-

tion in a criminal case, than the presumption of payment in a civil cause; yet in both alike, the party is entitled to the benefit of the presumption, to be considered with all the other evidence in the case, and which is to stand, till it is overcome by the other evidence. *Grantham* v. *Canaan*, 38 N. H. 268, and cases cited.

The case finds that the defendant offered no other evidence of the payment of taxes in Hampstead, except that in relation to the tax of 1851, which had been abated. All these taxes had been assessed within twenty years before the date of the writ, and no presumption of payment arises until twenty years after the tax is assessed, so that in this case, there was no evidence or presumption of payment of any of the taxes from 1849 to 1855, inclusive, except in the year 1851, and this was the only time when Burrill could have gained any settlement in Hampstead after leaving Plaistow. The defendant failed in not proving payment of the taxes assessed in Hampstead for a sufficient length of time to gain a settlement in any of the ways prescribed by law.

The instructions, in regard to Willey's marriage, we think, are erroneous. To be sure, these instructions become immaterial, since the jury have found that he had no settlement in this state. But the instructions leave out of view entirely, the question of ratification of the contract of marriage subsequent to the marriage ceremony, while the case finds, that here was evidence that bore directly upon that question.

In *Farmington* v. *Somersworth*, 44 N. H. 589, it does not appear that there was any evidence bearing upon the question of ratification, and that subject is not discussed or alluded to in the opinion; nor does it appear that it was alluded to in the arguments of counsel. So far as the case went, in its facts, the law is properly stated; but in this case, a new element is introduced, that of ratification, and the instructions should, we think, have been modified accordingly. If either party to a marriage contract had a husband or wife alive at the time, or if either party was an idiot, a *non-compos*, or insane person, so as not to be capable of assenting to the contract, having no contracting mind, then the contract would be void *ab initio*, and any party might, perhaps, prove that fact, and avail themselves of the benefits to be derived from it, in any collateral suit or proceeding. So if the marriage were effected by fraud or duress, and was never afterwards ratified voluntarily, by a mind having the proper capacity, and also free at the time of ratification to act without fraud or force, then the same results might follow.

But the authorities are numerous and uniform and entirely conclusive upon the point, that such marriages may be good at the election of the injured party, who, on being set free from the influence of the fraud or duress, may then give a voluntary consent,—may ratify and confirm the contract, while the other party cannot avoid it by taking advantage of his own wrong; cannot interpose the objection of his own fraud or duress, that the contract and the consent was not mutual.

The injured party may, if he choose, waive the objection, and thereby render the marriage good. And it has been held that a voluntary cohabitation, after full knowledge of the fraud, and after the force, or the cause of fear is removed, will cure the defect. Bishop on Marriage and Divorce, secs. 98 to 123, and cases cited.

In this case, if the facts were all as stated, or supposed in the instructions, then, perhaps, the marriage might not have been legal as to the town of Plaistow, if the contract had not afterwards been ratified; although it would seem to be doubted, on high authority, whether the marriage is not well enough, in this class of cases, when there is no fraud or deception on the part of the female, who is alleged to be pregnant; and she is no party to or participator in the fraud or duress used by other parties.

But if the jury had found, as they probably would have done upon the evidence stated in the case, if that matter had been submitted to them, that Willey afterwards ratified the contract of marriage, by voluntarily cohabiting with the said Cynthia as his wife, then a ratification as to one, is a ratification as to all, so far as we can see, and the town of Plaistow would stand in no different position from that of anybody else. But as we have seen, this question does not affect the verdict here.

The other instructions, as to the amount of evidence required to prove a negative, we think, were well enough. The party having to prove a negative, especially when the subject-matter is equally open and plain to both sides, usually puts in some evidence tending to prove his case, as he did here and rests. If the other side having equal knowledge of the facts, and an equal chance for proof, fails to furnish any evidence, he may safely submit the matter to the jury. But if the other party introduce evidence,—if the defendant in this case introduced evidence tending to show a settlement in this state,—that must be rebutted and overcome. The burden was on Hampstead to prove the negative; but that being the case, it does not follow that Hampstead must summon the town clerk of every town in the state, with his records, to attend court, to show to the jury that Willey or his father had no settlement in any of these towns.

The case does not show whether William Willey, the father, was dead or alive, or what became of him, only that he lived in Danville a while and was taxed there, but gained no settlement, and that Mrs. Willey, the mother of Daniel S., always lived in Danville, and had been aided by the county. The case does not show when she was thus aided, but we infer that it was after her marriage to William Willey, and after he had either died or left the state. If so, that would be *prima facie* proof, that neither she nor her husband had any settlement in this state.

For if he had, or had acquired any such settlement, his wife would of course take the same; and if he had none, then his wife would keep her own settlement if she had any; and it is only when neither of them has any settlement that a wife can properly be aided by the county; and when the county commissioners have examined a claim

against the county and allowed it, and the court has approved it, that is in the nature of a judgment, that the person thus aided is a county pauper; or in other words, that such person has no legal settlement in the state. Such judgment may be erroneous, and so may any other judgment, and may be reversed on bill of exceptions, or changed upon a new trial; but until so reversed or changed it is valid, and is competent evidence of the facts necessarily found or established by such judgment.

Here was the finding of the commissioners, that neither Mrs. Willey nor her husband had any settlement in this state, which would at least make a *prima facie* case, which would be sufficient in the absence of other testimony.

The exception that there was no evidence of notice given by plaintiffs to defendant of supplies furnished the alleged paupers, cannot, we think, be sustained. The case finds that a notice, purporting to be signed by the officers of Hampstead, was served upon the officers of Plaistow, and the facts in the case tended to show that the town of Hampstead had proceeded upon the ground that this notice was genuine, or at least that the town had adopted it as their act and had relied upon it and ratified it, by bringing and prosecuting this suit, and these acts were competent evidence tending to show that this notice was originally genuine, or that it had been ratified by the town and adopted as a true and genuine notice. Upon this evidence the town of Hampstead would have been estopped to deny that the notice was genuine, if a verdict had been rendered against the town. And we think the court was right, in holding contrary to defendant's exception, that there was some evidence of notice and sufficient to warrant, the court in submitting that fact to the jury, and a general verdict for the plaintiff is a finding that the jury judged the evidence sufficient, and we think they judged rightly.

*Judgment on the verdict.*